**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **TOVAR SNOW PROFESSIONALS, INC.,** | ) | |
| | ) | |
| | ) | **No. 20-cv-01060** |
| **Plaintiff,** | ) | |
| v. | ) | **District Judge Virginia Kendall** |
| | ) | |
| **ACE AMERICAN INSURANCE COMPANY,** | ) | **Magistrate Judge Jeffrey Cummings** |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant ACE American Insurance Company's ("ACE") motion to compel plaintiff Tovar Snow Professionals, Inc. ("Tovar") to produce amended discovery responses. (Dckt. #46.) Plaintiff filed a response on May 11, 2021 (Dckt. #51), to which defendant replied on May 13, 2021 (Dckt. #54). For the reasons set forth below, defendant's motion to compel discovery is granted in part and denied in part.

**I.     BACKGROUND**

**A.     The Incident**

Tovar brings this lawsuit against ACE alleging breach of contract and violations of the Illinois Insurance Code.[1] (Dckt. #1-1.) According to the Complaint, Tovar is an Illinois corporation that operates a snow removal business based in Lockport, Illinois (the "City"). (*Id.* at 5.) In order to refuel its trucks and a front-end loader, Tovar stores gasoline and diesel fuel in two large above-ground storage tanks. (*Id.*) On February 16, 2019, a malfunction in one of the storage tank's fuel dispensers caused more than 500 gallons of diesel fuel to be mistakenly

---

[1] This case was removed to the Northern District from the Circuit Court of Cook County on February 13, 2020.

1

released. (*Id.*) Following the fuel release (the "Incident"), the City sent Tovar a "Notice to Remedy Prohibited Discharge," demanding that Tovar remediate the damage and stop the fuel from spreading off-site. (Dckt. #46-3.) The Illinois Environmental Protection Agency ("IEPA") also sent Tovar a "Violation Notice," alleging violations of environmental law. *Id.*

Tovar hired Nixon Peabody LLP, a law firm, to coordinate the legal defense of the claims against it. (Dckt. #51 at 5.) Nixon Peabody charged more than $200,000 for legal services rendered through December 26, 2019. (Dckt. #46 at 4.) Tovar also paid non-lawyer contractors to "assist in defense of the environmental claims." (Dckt. #51 at 5.) It is unclear whether these contractors were hired by Nixon Peabody or directly by Tovar. Altogether, Tovar has incurred more than $3 million in expenses related to its cleanup efforts. (*Id.* at 2.)

**B.     The Policy**

At the time of the Incident, Tovar was insured by ACE under the "TANKSAFE Storage Tank Liability Insurance Policy." (Dckt. #1-1 at 7, 30.) The policy covers two categories of costs and expenses: (1) "third party claims and first party remediation costs" and (2) "legal defense expenses." (*Id.*) The first category includes two subcategories: "claims" (defined as assertions of legal rights from third parties for bodily injury or property damage resulting from a storage tank incident), and "remediation costs." "Remediation costs" are further divided into three subcategories: (1) reasonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize or immobilize a storage tank incident; (2) reasonable legal costs "where such cost has been incurred by an insured party with the written consent of the insurer"; and (3) "replacement costs" (defined as "reasonable expenses required to restore, repair or replace real property, or physical improvements thereto, damaged" while responding to a storage tank incident). The second overarching category, "*legal defense expenses*," is defined to

include "reasonable legal costs, charges, and expenses, including expert charges, incurred by the 'insured' in the investigation, adjustment, or defense of a 'claim.'"  (Dckt. #1-1 at 30-38.)

The parties do not dispute that there was a "storage tank incident" involving a "covered aboveground storage tank," which resulted in a "claim" being made against Tovar.  (Dckt. #51 at 2-3.)  They do, however, disagree on whether the policy's definitions of "remediation costs" and "legal defense expenses" are ambiguous, and what, if any, liability limits attach to each category. For the purposes of this decision, it suffices to say the distinction between "remediation costs" and "legal defense expenses" could be outcome determinative, as Tovar argues that only the former category is subject to a $1 million liability limit.

## C.    The Parties' Coverage Dispute

Tovar initiated this claim on October 1, 2019, asserting that, despite having agreed to provide coverage, ACE failed to defend Tovar or pay any costs associated with the incident. (Dckt. #1-1.)  After Tovar filed suit, ACE provided some coverage.  Relying on invoices provided by Tovar, ACE concluded that Tovar had incurred more than $1 million in what ACE classified as "remediation costs."  (Dckt. #46 at 4.)  As of December 19, 2019, ACE tendered $1 million for those costs.  According to ACE, this exhausted the policy limit.  (*Id.*)  Even so, ACE also paid Tovar an additional $212,258.89 in "legal defense expenses" for the legal fees incurred by Nixon Peabody.  (*Id.*)

Tovar contends that ACE now owes at least $2.3 million under the policy for "contractor services" related to the incident.  (Dckt. #51 at 5.)  ACE maintains that these services were "remediation costs" and ACE is not obligated to pay anything beyond the $1 million it already tendered.  (Dckt. #46 at 4.)  Tovar responds that some, if not all, of the expenses at issue should be categorized as "legal defense expenses."  Tovar further argues that there is no limit for legal

defense expenses for covered, aboveground storage tank incidents *and* there is no aggregate limit of liability for claims involving aboveground storage tanks. (Dckt. #51 at 5.) Tovar also seeks to recover "unnecessary expenses" (Dckt. #1-1 at 16), and "consequential damages" (*id.* at 19) incurred due to ACE's failure to defend Tovar against the claims.

### D. Discovery

Discovery is ongoing and this case is subject to the Court's Mandatory Initial Discovery Pilot program, under which parties must provide certain discovery responses without the need for any request from the opposing party. (Dckt. #6.) ACE has sent two sets of interrogatories, and two sets of document production requests. (Dckt. #46-3, #46-4.) In addition to its written responses, Tovar has turned over more than 20,000 pages of records, which include contractor invoices and other records of expenses related to the incident. (Dckt. #51 at 8.)

Despite these disclosures, ACE alleges that Tovar failed to provide adequate responses to eight interrogatories and requests for production:

(1) Mandatory Initial Discovery Requests, Request No. 5
(2) First Set of Interrogatories, Interrogatory No. 2;
(3) First Set of Interrogatories, Interrogatory No. 3;
(4) First Set of Interrogatories, Interrogatory No. 6;
(5) First Set of Interrogatories, Interrogatory No. 7;
(6) Second Set of Interrogatories, Interrogatory No. 1;
(7) Second Set of Interrogatories, Interrogatory No. 2; and
(8) Second Request for Production, Request No. 1.

(Dckt. #46.) ACE asks the Court to compel Tovar to amend its disclosures to these eight discovery requests and to pay ACE's reasonable expenses incurred in drafting this motion to compel.

## II. LEGAL STANDARD

A party may file a motion to compel under Federal Rule of Civil Procedure 37 whenever another party fails to respond to a discovery request or when its response is insufficient.

4

Fed.R.Civ.P. 37(a). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg. Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F.Supp.3d 1044, 1046 (N.D.Ill. 2018). Rule 26 provides that the "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1); *see Motorola Sols., Inc. v. Hytera Communications Corp.*, 365 F.Supp.3d 916, 924 (N.D.Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). Discoverable information is not limited to evidence admissible at trial. Fed.R.Civ.P. 26(b)(1).

## III. ANALYSIS

In its motion to compel, ACE argues that Tovar's responses to eight interrogatories and requests are inadequate. The requests at issue can be divided into five categories: (1) mandatory initial discovery request; (2) remediation costs; (3) legal defense expenses; (4) "additional and unnecessary expenses" and "consequential damages"; and (5) request for document production. In essence, each of these requests asks Tovar to further categorize the damages it seeks. The overarching question before the Court, then, is how much detail Tovar must provide when categorizing its damages at this stage of discovery. The Court will address each category of disclosures in turn.

### A. Tovar must supplement its response to Mandatory Initial Discovery Request No. 5.

As part of the Mandatory Initial Discovery Pilot Project, the court required parties to answer a set of seven requests.[2] ACE alleges that Tovar failed to provide an adequate response to Request No. 5, which states:

---

[2] The requests supersede the party's Rule 26(a)(1) disclosures and parties are unable to opt out. (Dckt. #6.) Though the Pilot Project ended on June 1, 2020, neither party has suggested the disclosures mandated by the order are no longer required.

> Provide a computation of each category of damages claimed by you, and a description of the documents or other evidentiary material on which it is based, including materials bearing on the nature and extent of the injuries suffered. You may produce documents or other evidentiary materials with your response instead of describing them.

(Amended Standing Order Regarding Mandatory Initial Discovery Pilot Project.) In its supplemental response to this request, Tovar described three categories of damages: (1) compensatory or actual damages, (2) consequential damages, and (3) statutory damages. (Dckt. #46-2.) When computing actual damages, Tovar calculated its Incident-related expenses to total $3,482,661.00. Because ACE paid $1,212,259.00, and the parties agreed to remove $10,895.00 of expenses from the equation, Tovar asserts that ACE owes approximately $2,259,507.00. This sum, Tovar explained, "was obtained through review of Tovar's business records related to the storage tank incident as are maintained by Tovar in the ordinary course of business. In addition, Tovar refers ACE to the invoices that have been provided to ACE through counsel and/or produced in this case . . . ." (*Id.* at 2.) With respect to its consequential damages, Tovar did not provide an approximate figure. Rather, it stated it would eventually retain an expert witness to determine these damages "based on a review of Tovar's business records related to the storage tank incident." (*Id.*) Finally, Tovar claimed statutory damages of $60,000, plus attorney's fees and prejudgment interest, pursuant to 215 ILCS 5/155. (*Id.* at 3.)

ACE argues this response is inadequate because Tovar fails to provide any actual "computation" for each category. (Dckt. #46 at 6.) ACE further contends that the categories must include "remediation costs" and "legal defense expenses." (*Id.* at 8.) Tovar responds that (1) by providing an estimate of damages and documents detailing the work performed, it sufficiently complied with Request No. 5; (2) it requires expert testimony to supplement its answer; and (3) the demand for further categorization constitutes a contention interrogatory.

Although the request for further classification does constitute a contention interrogatory, the Court finds that a more detailed computation is required at this time.

### 1.    Tovar's current disclosure is insufficient.

Request No. 5 is analogous to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), which requires parties to disclose "a computation of each category of damages claimed" and "make available for inspection" the documents or evidence on which each computation is based. Fed.R.Civ.Pro. 26(a)(1)(A)(iii).  The level of detail required in a "computation" is not specified by the Pilot Project or Rule 26, but courts have generally held that a plaintiff must provide enough information that the defendant may "understand the contours of its potential exposure and make informed decisions regarding settlement and discovery."  *Jones v. Wal-Mart Stores, Inc.*, No. 2:15-cv-1454-LDG-GWF, 2016 WL 1248707, at *3 (D.Nev. Mar. 28, 2016).  Where the litigation has progressed into discovery, more detail is required.  *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (noting that "much greater detail" is necessary for damages computations produced at later points in the proceedings).  Plaintiffs able to easily access the information needed to calculate damages are also expected to provide more thorough computations.  *See, e.g., City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D.Cal. 2003) (finding plaintiff need not disclose a precise calculation where many of the relevant documents remained in defendants' hands).  With these standards in mind, the Court finds that Tovar must supplement its computation for two of the three categories of damages it claims (actual damages and consequential damages) and provide a computation for claimed "additional and unnecessary expenses."

First, the mere fact that Tovar provided an exact estimate of its actual damages – $2,259,507.00 – is not sufficient.  *Max Impact, LLC v. Sherwood Grp., Inc.*, No. 09 Civ. 902,

2014 WL 902649 at *5 (S.D.N.Y. Mar. 7, 2014); *accord In re Oakwood Homes Corp.*, 340 B.R. 510, 541 (D.Del.2006) ("Simply reciting a dollar figure [] is not enough under Rule 26(a)(1)(A)(iii)."). Tovar must explain *how* it arrived at this number. "The word computation contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages . . . . A plaintiff should disclose the basic method or formula by which it contends its damages should or will be calculated . . . ." *Jones*, 2016 WL 1248707, at *3 (citation omitted). Here, that means specifically identifying which costs were included in the calculation. Tovar's assertion that the number was obtained through review of business records related to the storage tank incident does not disclose the process by which Tovar selected expenses to include.

Furthermore, Tovar cannot avoid its obligation to provide a computation by referring ACE to "raw financial data," such as invoices and "detailed time descriptions from each of the various contractors." (Dckt. #51 at 9-10.) Regardless of what documents Tovar has disclosed, it "must provide a computation synthesizing these documents in a timely manner so that the defendant has the opportunity to conduct discovery on that point." *Long v. Copart of Connecticut, Inc.*, No. 2:04 CV 298, 2005 WL 8170013 at *2 (N.D.Ind. Apr. 25, 2005); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir.2006) (The computation disclosure "requires more than providing – without any explanation – undifferentiated financial statements."). While Request No. 5 does provide that Tovar "may produce documents or other evidentiary materials with [its] response instead of describing them," this production must be *in addition* to the computation, rather than in lieu of it.

Tovar's reliance on Federal Rule of Civil Procedure 33(d) is misplaced. The option to produce business records instead of answering an interrogatory only applies where the answer

"may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records." Fed.R.Civ.P. 33(d). In *Padilla v. Geovera Specialty Ins. Co*., for example, the court found that an amended "computation interrogatory" response was unnecessary where the plaintiff had provided a sworn proof of loss statement containing (1) the total loss and damage, (2) the amount claimed under the insurance policy, and (3) "a breakdown of the total loss claimed, including debris removal (28-man hours a[t] $25/hour for a total of $700), loss of use ($39,000), and a ten-page repair estimate from Cypress Hill Services (40,590.61)." No. 5:20-cv-259-Oc-30PRL, 2020 WL 5814304, at *1 (M.D.Fla. Sept. 30, 2020). Tovar has provided no such breakdown here. While Tovar contends that "each side has access to the exact same information" (Dckt. #51 at 9), this does not appear to be the case. Without a computation, ACE has no way of knowing how Tovar selected the damages to include in this estimate and is, as a result, left unable to understand the scope of its potential exposure.

### 2. The fact that Tovar will seek expert testimony regarding damages does not excuse Tovar from supplementing its response.

Tovar contends that it need not categorize its expenses at this point in discovery because expert testimony is needed to determine which expenses ACE is liable for under the policy. (Dckt. #51 at 11.) However, courts have repeatedly held that plaintiffs are able to provide some computation of damages prior to obtaining expert witnesses, despite plaintiffs' contentions to the contrary. *See THX, Ltd. v. Apple, Inc*., No. 13-cv-01161-HSG (DMR), 2016 WL 2899506, at *7 (N.D.Cal. May 13, 2016) ("Courts in this district have compelled . . . plaintiffs to provide the factual bases for their damages claim through initial disclosures and written discovery, over protestations that responsive information will be forthcoming through expert reports."); *DRC Emergency Servs., LLC v. Ashbritt, Inc.*, No. 14-62924-CIV-DIMITROULEAS/Snow, 2015 WL 12746109, at *3 (S.D.Fla. June 19, 2015) (finding that plaintiff must amend its disclosures

despite its contention that a final computation could not be made absent expert discovery); *Corning Optical Communications Wireless Ltd. v. Solid, Inc.*, No. 5:14-cv-03750-PSG, 2015 WL 1726749, *1-3 (N.D.Cal. Apr. 14, 2015) (granting accused's motion to compel plaintiff to supplement damages interrogatory because plaintiff's response stating, in essence, "we will supplement in expert discovery" was not sufficient).  At this point – well over two years since the incident – Tovar must disclose "the best information . . . available to it concerning the claim, however limited and potentially changing it may be."  *Pure Pools, Inc. v. Oxygen Pools, LLC*, No. 20-cv-80426, 2020 WL 4689775, at *4 (S.D.Fla. Aug. 13, 2020) (internal quotations omitted).

This conclusion is especially appropriate where Tovar asserts that it requires expert assistance to calculate damages that *it has already calculated* to equal approximately $2,259,507.00.  This estimate necessarily implies that Tovar has computed – based on its own interpretations of the policy – what costs ACE might be liable for, and Tovar must now disclose how it reached that number.  *See e.g., City and County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D.Cal. 2003) ("The Court notes the fact that Plaintiffs disclose a very specific dollar amount ($42,284,757.00) for compensatory and other damages indicates that they have already engaged in a detailed calculation of damages.")

The same is true for Tovar's consequential damages.  In response to Request No. 5, Tovar did not provide an approximate figure for consequential damages, but instead stated it would retain an expert witness to determine these damages based on a review of Tovar's business records.  (Dckt. #46-2 at 2.)  Tovar asserts that, due to the "nature of [its] claim for consequential damages," it requires an "expert witness to tie together the various facts and consequences flowing from ACE's ongoing breach of its duty to defend."  (Dckt. #51 at 14.)

10

Again, the Court understands that a precise calculation of Tovar's alleged damages may need to await future expert analysis. Still, Tovar contends that it has suffered damages due to ACE's delayed response to the incident. Unless this allegation is purely speculative, Tovar must have some information regarding what extra costs it incurred responding to the Incident without ACE's assistance. Indeed, Tovar listed three examples of likely consequential damages in its responses to ACE's First Set of Interrogatories. [3] (Dckt. # 46-3 at 20.) These costs should be included in its computation. *Joseph v. Las Vegas Metro. Police Dep't*, No. 2:09-cv-00966-HDM-LRL, 2010 WL 3238992, at *2 ("A party claiming damages has the obligation, when it makes its initial disclosures, to disclose to the other parties the best information then available to it concerning that claim, however limited and potentially changing it may be."). If it has not yet identified specific consequential damages, Tovar should further explain the method it will use to calculate these damages in the future.

### 3. Although Request No. 5 constitutes a contention interrogatory, it is appropriate for Tovar to respond.

Tovar's final objection to supplementing its response to Request No. 5 is that a request for further categorization constitutes a "contention interrogatory." [4] (Dckt. #46-6.) Tovar asserts that the distinction between "remediation costs" and "legal defense expenses" is "the central

---

[3] These examples were listed as "additional and unnecessary expenses" under Interrogatory No. 6, but incorporated in Tovar's response to Interrogatory No. 7, which asked Tovar to identify its "consequential damages." (Dckt. # 46-3 at 22.)

[4] The Court defines "contention interrogatories" as those interrogatories which "ask a party to indicate *what* it contends, whether it makes some specific contention, to state all the *facts* on which it *bases* some specified contention, to state all the *evidence* on which it *bases* some specified contention, to take a position, and then to explain or defend that position, with respect to *how the law applies to the facts*, or to spell out the legal basis for, or theory behind some specified contention." *U.S. ex rel. Tyson v. Amerigroup Ill. Inc.*, 230 F.R.D. 538, 545 (N.D.Ill., 2005) (internal quotes and citations omitted) (emphasis in original).

issue in the case because it determines the limits of Tovar's recovery." (Dckt. #51 at 2.)
According to Tovar, asking it to interpret ACE's "confusing and arguably ambiguous" insurance
policy would require it to take an important position before it has completed relevant discovery.
(Dckt. #51 at 2.)

The Court agrees that asking Tovar to distinguish between "remediation costs" and "legal
defense expenses" constitutes a contention interrogatory, as it will require Tovar to disclose how
it currently interprets the policy. Indeed, that is ACE's aim. ACE maintains that, under the
language of the policy, it is crystal clear which of the coverage "buckets" each of Tovar's
expenses falls into. (Dckt. #54 at 4.) The purpose of the requests, then, is not to help ACE
interpret its own policy, but to determine which (if any) expenses *Tovar* feels fit squarely into
one category or the other. If Tovar accepts there is some line between the two types of costs,
Tovar must disclose where it feels that line should be drawn. The timing of this disclosure –
when much, but not all, of discovery is complete – is appropriate, as contention interrogatories
are frequently used to obtain information from plaintiffs about damages theories and methods by
which damages are calculated. *See Tyson*, 230 F.R.D. 538, at 543-44 (observing that damages
contention interrogatories are commonplace and appropriate under the liberal discovery Rules).[5]

### 6. Tovar must amend its response to Mandatory Initial Discovery Request No. 5.

In light of the above, Tovar must supplement its response to Request No. 5 by providing
a list of each expense included in the $3,482,661.00 damages total. (Dckt. #46-2 at 2.) The list
should include (1) the amount spent; (2) a general description of the services rendered in

---

[5] Tovar's request not to provide a detailed computation at this stage is also not well-taken because, again, it must have *already categorized* its expenses in order to arrive at the $2,259,507.00 claim. Tovar stated that, in calculating its damages, it did not take "an extreme self-serving position and labeled most or all the expenses as Legal Defense Expenses to maximize Tovar's recovery." (Dckt. #51 at 11.) If this is not the approach Tovar took, it must disclose its alternative method for computing costs.

connection with the expense; (3) what person or company provided the service; (4) the documents on which the expense is based (either a description of, or reference to); and (5) whether Tovar views this expense as a remediation cost or a legal defense expense. If Tovar contends that the expense could be classified as *either* a remediation cost or legal defense expense, depending on how the policy is interpreted, it should so state. Tovar must also explain how it selected which expenses to include. If, in light of this ruling, Tovar feels a need to recalculate its actual damages, it should do so. If, due to the alleged ambiguity in the policy, Tovar includes each expense it incurred while responding to the incident, it should so state. Tovar is clearly aware of the legal standards for interpreting ambiguous insurance policies. (Dckt. #51 at 7.) It should apply those standards when calculating the actual damages it incurred.

Tovar must also provide an itemized list of its perceived consequential damages, or more details regarding how it intends to calculate those damages. This list should include: (1) the amount spent; (2) a general description of the expense; (3) any person or company paid in connection with the expense; and (4) the documents on which the expense is based (either a description of, or reference to). Finally, Tovar should provide an itemized list of any expenses it considers "additional and unnecessary expenses," to the extent that these differ from consequential damages, or more details regarding how it intends to calculate those damages.[6] This list should also include (1) the amount spent; (2) a general description of the expense; (3) any person or company paid in connection with the expense; and (4) the documents on which the expense is based (either a description of, or reference to).

---

[6] Though ACE did not request Tovar to categorize "additional and unnecessary expenses" in response to Mandatory Discovery Request No. 5, Tovar claims it incurred such damages and should include them here.

This disclosure will not bind or otherwise prejudice Tovar, as it may – and indeed, must – supplement or revise its estimated damages, if need be, after it has obtained further discovery. *Dunstan v. Wal-Mart Stores E., L.P.*, No. 3:07-cv-713-J-32TEM, 2008 WL 2025313, at *1 (M.D.Fla. 2008) ("Plaintiffs should be able to make a good faith estimate of damages and methods of calculations based on the information available at this stage of the litigation, while reserving the right to amend their calculations. . . . If estimates are made which might be subject to revision after [further discovery], as Plaintiffs contend, that is entirely permissible, but the requirements of Rule 26 cannot be avoided.") (internal quotations omitted).

**B.       Tovar must amend its response to Interrogatory No. 2 (First Set).**

In essence, both Interrogatory No. 2 (First Set) and Interrogatory No. 1 (Second Set) ask Tovar to identify which expenses it claims constitute "remediation costs" or "claims" under the policy. [7]  Interrogatory No. 2 further asks Tovar to identify:

(a) the date or dates the expense, cost, or liability was incurred;
(b) the amount of the expense, cost, or liability;
(c) the name, address, and number of the person, firm, or company to whom the expense, cost, liability is/was owed;
(d) whether the expense, cost, or liability has been paid and by whom;
(e) reason or purpose for which the expense, cost, or liability was incurred;
(f) detailed description of the work or materials provided in connection with the expense or cost, or the damage for which the liability was incurred;
(g) the date or dates the expense, cost, or liability was submitted to ACE for coverage under the Policy; and
(h) name/address/number of each person who has personal knowledge of the information provided by Tovar in response to this interrogatory.

(Dckt. #46-3 at 7.)  Tovar objected that the interrogatory was overly broad, vague, and ambiguous, and argued that it need not respond where ACE was already in possession of the

---

[7] In its motion to compel, ACE does not argue that Tovar did not sufficiently disclose the "claims" at issue.

information requested and where the interrogatory asked for a legal conclusion.[8]  Subject to

these objections, Tovar responded that "at least the expenses incurred by GFL, RW Collins,

RailPros, Rose Paving, and other miscellaneous expenses constitute 'remediation costs' as

defined by the Policy."  (*Id.*)

Tovar's assertion that it need not respond because ACE already possesses the relevant

documents is without merit, as explained in Section III.A.1.  Moreover, it's objection that it need

not categorize "remediation costs" because asking it to do so constitutes a contention

interrogatory has similarly been addressed and dismissed. (*See* Section III.A.3.)  Therefore,

Tovar must submit an amended response to Interrogatory No. 2 (First Set).  Providing this

response shall not be unduly burdensome because the Court will limit the arguably vague and

overbroad subparts as follows.  In subpart (f), a "detailed" description is one that will enable

ACE to determine generally who performed what work when and why.  In response to subpart

(h), Tovar need only provide the name, address, and phone number of each person of whom

Tovar is, or reasonably should be, aware and who has personal knowledge of the work

performed and its cost.  *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996) ("[A]

district court is not limited to either compelling or not compelling a discovery request; in making

its ruling, a district court should independently determine the proper course of discovery based

upon the arguments of the parties.").  To the extent the interrogatory is repetitive, Tovar should

---

[8] Tovar notes that its responses to ACE's interrogatories are subject to its objection that ACE has propounded more than twenty-five interrogatories including all discrete subparts.  (Dckt. #51 at 1.) Federal Rule of Civil Procedure provides that "[w]ithout leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts . . . ." Fed.R.Civ.P.33(a).  After a thorough review of the defendant's interrogatories *at issue here* and their subparts, the Court finds that the subparts are factually or logically related to the primary question and should be treated as a single interrogatory.  *Bell v. Woodward Governor Co.*, 2005 WL 3829134, at *1 (N.D.Ill. June 30, 2005) (applying the rule that "interrogatory subparts are to be counted as one interrogatory . . if they are logically or factually subsumed within and necessarily related to the primary question") (citations omitted).

direct ACE to previous interrogatory answers. *See Muchin v. Lincolnshire Bath & Tennis Club, Inc.*, No. 91 C 746, 1991 WL 264605, at *1 (N.D.Ill. Dec. 6, 1991) (finding that referencing prior answers is sufficient where interrogatories seek the same information).

Interrogatory No. 1 also focuses on "remediation costs" by asking Tovar to "provide an itemization of all reasonable expenses incurred by Tovar to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize" the Incident. This restates the first of the three subcategories in the policy's definition of "remediation costs."[9] Accordingly, the Court finds that Interrogatory No. 2 (First Set) and Interrogatory No. 1 (Second Set) are unjustifiably repetitive, so Tovar need only submit an amended response to the former. *See Payer, Hewitt & Co. v. Bellanca Corp.*, 26 F.R.D. 219, 222 (D.Del. 1960) (sustaining an objection that an interrogatory was "repetitious, redundant and tautological" to another interrogatory).

### C.     Tovar must amend its response to Interrogatory No. 3 (First Set).

Both Interrogatory No. 3 (First Set) and Interrogatory No. 2 (Second Set) ask Tovar to identify which expenses it claims constitute "legal defense expenses" under the policy. Interrogatory No. 3 further asks Tovar to identify:

> (a) the date or dates the cost, charge, or expense was incurred;
> (b) the amount of the expense, cost, or liability incurred;
> (c) the name, address, and telephone number of the person, firm, or company to whom the expense, cost, liability is/was owed;
> (d) whether the cost, charge, or expense has been paid and by whom;
> (e) the reason or purpose for which the cost, charge, or expense was incurred;
> (f) a detailed description of the work performed or materials provided in connection with the cost, charge, or expense;
> (g) the date or dates the cost, charge, or expense was submitted to ACE for coverage under the Policy; and

---

[9] As noted above, the category also includes "reasonable legal expenses" incurred with the written consent of the insurer; and "replacement costs" related to real property. Because these costs are easy to distinguish, ACE's request that Tovar even further categorize its expenses into the "remediation expenses" subcategories is repetitive and unduly burdensome.

(h) the name/address/number of each person who has personal knowledge of the information provided by Tovar in response to this interrogatory.

(Dckt. #46-3 at 10.)  Tovar incorporated the same objections it raised in response to Interrogatory No. 2 (First Set) and responded that "at least the expenses incurred from Burke Engineering, Nixon Peabody, Lowenstein, Ramboll, and other miscellaneous expenses constitute 'legal defense expense' as defined by the policy."  (*Id.* at 11.)  Interrogatory No. 2 (Second Set) merely restates the policy's definition of "legal defense expenses," asking Tovar to provide an itemization of all "reasonable legal costs, charges, and expenses incurred by Tovar in the investigation, adjustment, or defense" of the claims related to the Incident.

The Court's analysis of ACE's motion to compel amended responses to these two interrogatories is identical to that conducted in Section III.B.  Accordingly, Tovar must submit an amended response to Interrogatory No. 3 (First Set).  In this amended response, Tovar must list the items it characterizes as either "legal defense expenses" or "potential legal defense expenses."  The Court limits the arguably vague and overbroad subparts of Interrogatory No. 3 (First Set) as follows.  In subpart (f), a "detailed" description is one that will enable ACE to determine who performed what work when and why.  In response to subpart (h), Tovar need only provide the name, address, and phone number of each person of whom Tovar is, or reasonably should be, aware and who has personal knowledge of the work performed and its cost.  The Court finds that Interrogatory No. 3 (First Set) and Interrogatory No. 2 (Second Set) are unjustifiably repetitive, and Tovar need only submit an amended response to the former.

### D.    Tovar must amend its responses to Interrogatory No. 6 (First Set) and Interrogatory No. 7 (First Set).

Interrogatory No. 6 (First Set) asks Tovar to identify the "additional and unnecessary expenses" incurred by Tovar, and Interrogatory No. 7 (First Set) asks Tovar to identify the losses

for which it seeks to recover "consequential damages." (Dckt. #46-3 at 19, 21.) Interrogatory

No. 6 includes seven subparts and Interrogatory No. 7 includes six subparts.[10] Tovar objected to

both interrogatories on the grounds that they are overly broad, vague, ambiguous, premature, and

burdensome. In addition, Tovar once again alleges that it need not amend its response because

the expenses are reflected in documents already provided to ACE. Tovar asserts that the

"consequential damages" request also seeks information protected under the attorney-client

privilege and/or work product doctrine. Subject to these objections, Tovar provides three

examples of costs, which it submits could be classified as either "additional and unnecessary

expenses" or "consequential damages." (Dckt. #46-3 at 20.)

For the same reasons described in Sections III.B. and III.C., Tovar must amend its responses to

these interrogatories. Nonetheless, the Court limits the arguably vague and overbroad subparts

of Interrogatory No. 6 (First Set) as follows. In subpart (f), a "detailed" description is one that

will enable ACE to determine who performed what work when and why. In response to subpart

(g), Tovar need only provide the name, address, and phone number of each person of whom

Tovar is, or reasonably should be, aware and who has personal knowledge of the work and

---

[10] With regard to "additional and unnecessary expenses," ACE asks that Tovar provide:
    (a) the date or dates the expense was incurred;
    (b) the amount of the expense;
    (c) the name, address, and phone number of the person, firm, or company to whom the expense is or was
        owed;
    (d) whether the expense has been paid and, if so, by whom;
    (e) the reason the expense was incurred;
    (f) a detailed description of the work performed or materials provided in connection with the expense; and
    (g) the name, address, and telephone number of each person who has personal knowledge of the
        information provided by Tovar in response to this interrogatory.

With regard to "consequential damages," ACE asks that Tovar provide:
    (a) the amount of the loss;
    (b) the date or dates the loss was incurred;
    (c) a description of the loss;
    (d) the conduct by ACE that allegedly caused the loss;
    (e) a description of how ACE's conduct allegedly caused the loss; and
    (f) the name, address, and telephone number of each person who has personal knowledge of the
        information provided by Tovar in response to this interrogatory.

expense. Tovar need not provide any privileged information in its response to Interrogatory No. 7. To the extent the interrogatory is repetitive, Tovar should direct ACE to previous interrogatory answers. If it has not yet identified specific "additional and unnecessary expenses" or "consequential damages," Tovar should further explain the method it will use to calculate these damages in the future.

      **E.**    **If Tovar provides documents (or references specific documents already provided) in its amended response to Mandatory Discovery Request No. 5, it need not supplement its response to Request for Production No. 1 (Second Set).**

In Request for Production No. 1, ACE asked Tovar to produce all documents upon which Tovar based its answers to the Second Set of Interrogatories. Because Tovar had objected to both interrogatories included in the second set, which essentially asked Tovar to itemize its remediation costs and legal defense expenses, it claimed there were no responsive documents.[11] As is true for most of the interrogatories discussed here, it is likely this document production request seeks information Tovar will provide in its amended answer to mandated discovery. If, in its amended response to Request No. 5, Tovar chooses to provide a "description of the documents or other evidentiary material" on which its computation is based – rather than the documents themselves – as is specifically permitted in the Request, then it must provide any invoices and other documents related to its alleged "remediation costs" and "legal defense expenses" in a supplemental response to this production request. If Tovar provides documents (or references specific documents already provided) in its amended response to Request No. 5, then this production request is repetitive, and Tovar need not supplement its response.

---

[11] *See* Sections III.B. and III.C.

**IV.**    **ACE is not entitled to attorney's fees.**

ACE argues that it is entitled to attorney's fees for bringing this motion to compel amended discovery responses. (Dckt. #46 at 13.) A magistrate judge has the authority to hear and determine a request for attorney fees following a successful discovery motion. *Hangzhou Aoshuang E-Commerce Co., Ltd. v. 008Fashion*, 336 F.R.D. 154, 157 (N.D.Ill. 2020). If a court grants in part and denies in part a motion to compel, that court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed.R.Civ.P. 37(a)(5)(C). However, a court need not award fees where "the nondisclosure, response, or objection was substantially justified." Fed.R.Civ.P. 37(a)(5). Here, although ACE's motion was granted in part, the Court limited the breadth of several of its requests and declined to order Tovar to answer two interrogatories on the grounds that they were repetitive. Furthermore, the Court agrees with Tovar that most – if not all – of the interrogatories at issue constitute contention interrogatories, which are often deferred until near the end of discovery. *See Ziemack v. Centel Corp.*, No. 92 C 3551, 1995 WL 729295, at *2 (N.D.Ill. Dec. 7, 1995) ("The general policy is to defer contention interrogatories until discovery is near an end, in order to promote efficiency and fairness."). Tovar's objections to the interrogatories were not frivolous, nor do they appear to have been made in bad faith. Accordingly, Tovar's objections, though overruled in large part, were substantially justified and ACE is not entitled to an award of attorney's fees.

**CONCLUSION**

For the foregoing reasons, defendant's motion to compel is granted in part and denied in part. By October 28, 2021, plaintiff is ordered to amend its answers and responses in accordance with this decision. Defendant's motion is otherwise denied. By November 4, 2021, the parties

shall file a joint status report setting forth what discovery has been completed, what discovery remains (if any), and a proposed schedule for the completion of any remaining discovery.

**ENTERED:   October 12, 2021**

**Jeffrey I. Cummings**
**United States Magistrate Judge**